[No. F009521. Fifth Dist. Aug. 25, 1988.]

In re RAYMUNDO B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RAYMUNDO B., Defendant and Appellant.

**COUNSEL**

Jorge C. DeQuesada, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael J. Weinberger and Thomas Y. Shigemoto, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BEST, J.**—Raymundo B. appeals his commitment to the California Youth Authority. His principal contention is that he was denied his constitutional right to a separate interpreter during the proceedings below. We affirm.

## STATEMENT OF THE CASE

On September 8, 1987, a supplemental petition was filed in the Juvenile Court of Kings County alleging that the minor, Raymundo B., came within the provisions of section 602 of the Welfare and Institutions Code and charging him with one felony count of burglary of a vehicle in violation of Penal Code section 459 and one misdemeanor count of theft in violation of Penal Code sections 484 and 488. The petition also alleged that the minor was a ward of the court and on probation for the following previous violations of the law: an August 1, 1983, violation of Penal Code section 148, resisting arrest; a November 21, 1983, violation of Penal Code section 602, subdivision (*l*), trespass; and a February 1, 1984, violation of Penal Code section 242, battery.

On September 8, 1987, Virginia Zamora was appointed as the interpreter for both the minor and his parents. At the hearing on September 28, 1987, the court found the allegations of the petition true beyond a reasonable doubt and set a disposition hearing for October 13, 1987. On September 29, 1987, a detention hearing was held pursuant to a bench warrant issued in one of the previous matters. As the minor was already in custody, the court set the disposition of that matter for October 13, 1987, as well.

On October 13, 1987, counsel for the minor filed a "NOTICE OF MOTION TO DECLARE PRIOR FINDINGS CONSTITUTIONALLY INVALID" based on a failure to provide the minor an interpreter at all prior proceedings. The court set October 29, 1987, as the date for an evidentiary hearing on the motion.

At the hearing on the motion, the minor sought to have all prior proceedings "declared constitutionally invalid" and the resulting petitions set aside because the court records reflected that he was provided an interpreter at some, but not all, of those proceedings. He further sought to have the findings on the September 8, 1987, petition set aside because the same interpreter who had been provided for the minor had also interpreted for the minor's parents. The court denied the motion, finding the minor had not met his burden of showing that he did not understand English. It further found by clear and convincing evidence "that Raymundo does now speak

and understand and did then and during all previous court proceedings that we're addressing here speak and understand the English language."

The court then ordered the minor to remain a ward of the court and committed him to the California Youth Authority for a total maximum confinement period of 48 months pursuant to Welfare and Institutions Code section 731 and also ordered that Raymundo pay a restitution fine pursuant to Welfare and Institutions Code section 730.6 in the amount of $100.

The facts underlying the offenses alleged in the current petition are not pertinent to the issues raised on appeal; we note, however, the evidence was not only substantial but overwhelming that the minor committed the offenses.

## Discussion

The posthearing motion brought by the minor in the lower court sought to "declare prior findings constitutionally invalid" based on the ground that in certain proceedings which had taken place before the filing of the September 8, 1987, petition, Raymundo had sometimes been provided an interpreter, while during others he had not. He also moved to have the finding on the petition filed September 8, 1987, set aside on the ground that the same interpreter provided to Raymundo had also interpreted for Raymundo's parents. With respect to the earlier matters, according to defense counsel, an interpreter had been provided on October 24, 1983, and again on August 1, 1983. He stated that Raymundo was not provided an interpreter on September 12, 1983, January 17, 1984, or on February 5, 1985. On appeal, the minor contends that the lower court erred in its determination that he could understand English during all these proceedings and consequently did not require the services of an interpreter.

A. *Whether a Reversal Is Required Because the Record Is Inadequate With Respect to the Proceedings Occurring Prior to the September 8, 1987, Petition*

There is no mention in the record before this court of exactly what the prior proceedings at issue were or what effect, if any, they may have had upon Raymundo's record. In fact, none of the transcripts or records from any of the earlier proceedings were included in the record on appeal. However, because the court below did take judicial notice of these earlier matters and accepted the fact that an interpreter was not always present as a basis for the proceeding under review here, we also accept this as true for the purposes of reaching the substance of the minor's contentions.

▇ The minor contends that since the record on appeal is inadequate with respect to these prior proceedings, the case must be remanded. Appellate counsel argues, "In view of the fact that the minor had told the court that he understood a 'little bit of English,' that interpreters had been appointed for him in the past, that an interpreter had been provided for him in [this] case, the court should have made further efforts to ascertain whether or not the minor's constitutional rights had been violated. The record is inadequate to ascertain the question, let alone support the court's findings that the minor understood English, by clear and convincing evidence."

This is a specious argument for two reasons. First, it is the appellant's burden to provide an adequate record on appeal.

" ' " For an appeal to engage the consideration of an appellate court, it must be brought up on a record which, in addition to being otherwise formally sufficient, shows the error calling for correction. Such error is never presumed, but must be affirmatively shown, and the burden is upon the appellant to present a record showing it, any uncertainty in the record in that respect being resolved against him." ' " (*People* v. *Green* (1979) 95 Cal.App.3d 991, 1001 [157 Cal.Rptr. 520].)

If the records of those earlier proceedings established that the minor required an interpreter, then it either was trial counsel's duty to build that into the record or appellate counsel's duty to have the record from those earlier proceedings incorporated into the record on appeal and transmitted to this court.

Secondly, the court did make the "further efforts" mentioned by counsel; it held a complete hearing in which witnesses testified and in which documentary evidence was considered before the judge reached his decision. What is before this court is the transcript of that hearing. It is upon that record that appellate review will be made.

B. *Whether an Interpreter Is Required Whenever a Defendant Unilaterally Requests One*

▇ The minor also argues that an interpreter must be provided to any defendant who requests one. He states, "The court should not interfere with a limited English speaker's personal determination that he needs an interpreter's assistance."

We first note there is no evidence in this record that Raymundo requested an interpreter at those earlier proceedings. Similarly, during the hearing on the petition filed September 8, 1987, the court, on its own initiative, ordered

the interpreter who had been appointed to interpret for the parents to also interpret for Raymundo; there was no request by the minor or his counsel to have an interpreter, separate or otherwise. The minor also never claimed to not understand English, a fact mentioned by the trial court. Nevertheless, we address the issue.

In support of his contention, the minor cites *People* v. *Aguilar* (1984) 35 Cal.3d 785 [200 Cal.Rptr. 908, 677 P.2d 1198], *People* v. *Chavez* (1981) 124 Cal.App.3d 215 [177 Cal.Rptr. 306] and *United States* ex rel. *Negron* v. *State of New York* (2d Cir. 1970) 434 F.2d 386. None of these cases stand for the proposition that an interpreter must be provided on demand, nor ,was that issue even considered. The need for an interpreter in these cases was undisputed. In each case there was either an agreement or a judicial finding that the defendant did not understand English. (*People* v. *Aguilar, supra,* at p. 789, fn. 4; *People* v. *Chavez, supra,* at p. 219; *United States* ex rel. *Negron* v. *State of New York, supra,* at p. 388.)

"A person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." (Cal. Const., art. I, § 14.) ■ This constitutional provision also requires that an interpreter be provided to a juvenile charged with a crime. (*In re Dung T.* (1984) 160 Cal.App.3d 697, 708-709 [206 Cal.Rptr. 772].) ■ However, an affirmative showing of need is required. As this court explained in *People* v. *Carreon* (1984) 151 Cal.App.3d 559 [198 Cal.Rptr. 843]: "Prior to enactment of this constitutional provision [art. I, § 14], courts had developed the rule that upon the defendant's showing of necessity, appointment of an interpreter was required as a matter of due process. [¶] In the past, trial courts had been afforded broad discretion in determining whether a defendant's comprehension of English was minimal enough to render interpreter services 'necessary.' [Citations.] Nothing in the new constitutional provision changes this well established requirement of a finding of necessity by the trial court. Indeed, the provision specifically states that the right to an interpreter is contingent upon a person's being 'unable to understand English.' [Citation.]" (*Id.* at pp. 566-567.)

The prerequisite to an appointment of an interpreter is, therefore, that the person charged with a crime be "unable to understand English," not that he demand an interpreter. While the fact that the person who has been charged with a crime states that he does not understand English and requests an interpreter on that basis may be some evidence of the fact that the charged individual does not understand English, it cannot be considered conclusive proof of that lack of proficiency in English.

## C. *Whether the Trial Court Erred by Placing the Burden as to the Necessity of an Interpreter on the Minor*

■ Raymundo also contends that the lower court erred in placing on him the burden of establishing the necessity of an interpreter. At the conclusion of the evidence taken at the hearing on the motion, the court began its explanation of its ruling with the following statement: "And I would note that the burden is on the minor, on Raymundo to show that he did not understand the English language, and I don't think the burden was met. But not only that, I would find that by clear and convincing evidence that—regardless of whether the burden was met—that Raymundo does now speak and understand and did then and during all previous court proceedings that we're addressing here speak and understand the English language."

There were basically two sets of proceedings under review at the October 29, 1987, hearing. The first set was composed of those which took place prior to the filing of the September 8, 1987, petition. These earlier proceedings encompassed a period of several years and were presided over by several judges. The proceedings pursuant to the September 8, 1987, petition were presided over by the Honorable Timothy S. Buckley, who also heard the minor's motion to set aside the findings on the various petitions. Therefore, when it heard the motion, the court was, in effect, acting as a reviewing court with respect to the record relating to the previous petitions.

Our decision in *Carreon* made it clear that, when the ability of one charged with a crime to understand English is being evaluated at the outset of the proceedings, the burden is on the accused to show that his understanding of English is not sufficient to allow him to understand the nature of the proceedings and to intelligently participate in his defense. However, here the minor is arguing that since the lower court was conducting a review of prior proceedings to see whether or not they conformed to the constitutional requirements regarding the appointment of interpreters, a different standard should be applied. He argues that, since an interpreter had been provided on previous occasions, a presumption arose that Raymundo did not have a sufficient grasp of English and that this presumption shifted the burden of proof to the prosecution to show that he did, in fact, speak English.

Most of the recent cases dealing with the issue of interpreters have dealt with situations in which an interpreter was not provided to a non-English speaking defendant or those in which the same interpreter who had been appointed for a defendant also interpreted for codefendants or witnesses. (See *People* v. *Rodriguez* (1986) 42 Cal.3d 1005 [232 Cal.Rptr. 132, 728 P.2d 202]; *People* v. *Aguilar, supra*; *People* v. *Carreon, supra*; *People* v.

*Chavez, supra.*) In none of these cases was a lower court's determination as to whether or not the defendant did or did not sufficiently comprehend English the subject of review. (But see J. Richardson's dissent in *People* v. *Aguilar, supra,* 35 Cal.3d at pp. 795-797, in which he questions the validity of the majority opinion on the ground that the defendant "had sufficient knowledge of the English language" and did not require an interpreter.)

The minor cites *People* v. *Estany* (1962) 210 Cal.App.2d 609 [26 Cal.Rptr. 757], *People* v. *Avila* (1920) 50 Cal.App. 228 [194 P. 768], *People* v. *Holtzclaw* (1926) 76 Cal.App. 168 [243 P. 894] and *People* v. *Santos* (1933) 134 Cal.App. 736 [26 P.2d 522] for the proposition that a presumption of need arises once an interpreter has been appointed. None of these cases stand for this proposition, nor is it even arguably dealt with in the latter three. *Estany* does make reference to *People* v. *Hernandez* (1957) 150 Cal.App.2d 398 [309 P.2d 969] where the court simply states, "From the testimony before us it does affirmatively appear that an interpreter was used in a few instances and we must assume, *in the absence of any other showing,* that it was necessary." (*Id.* at p. 401, italics added.)

Although Raymundo maintains that this passage creates a presumption of a lack of knowledge of English in instances in which an interpreter was provided, a more straightforward reading of the language indicates that all the *Hernandez* decision stands for is that, if the only evidence offered was that an interpreter had been provided previously, then the reviewing court must conclude that one was required because the defendant had an insufficient grasp of English. However, if other evidence was presented, i.e., there was no "absence of any other evidence," then the appellate court should evaluate all the evidence on the issue which was before the lower court.

This was the conclusion of the *Estany* court which, contrary to the minor's assertion, is on point with the instant case and works against his theory. There the court explained: "The *Hernandez* case, *supra,* affirmed a finding that an interpreter was necessary, holding that when it was shown that an interpreter was used in a few instances in the proceeding before the grand jury, the appellate court would have to assume, in the absence of any other showing, that an interpreter had been necessary. This holding has no application to the case at bar. There was evidence before the magistrate that defendant could in fact understand and speak English." (*People* v. *Estany, supra,* 210 Cal.App.2d at pp. 611-612.)

Therefore, the *Estany* court looked simply to the presence of other evidence in evaluating the lower court's determination of whether or not an interpreter was required. It reaffirmed that "[t]he question of the necessity

of an interpreter, as distinguished from the question of whether one should be appointed when the necessity is clear, is a matter for judicial determination over which the trial court is permitted to exercise its discretion." (*People* v. *Estany, supra,* 210 Cal.App.2d at p. 611; see also *People* v. *Carreon, supra,* and *People* v. *Rebolledo* (1949) 93 Cal.App.2d 261, 264 [209 P.2d 16].) The fact that an interpreter had been provided for a defendant in certain prior proceedings was just one factor to be evaluated. As long as there was other evidence before the lower court that indicated the defendant did, in fact, understand English, a decision of the lower court denying the appointment of an interpreter will be upheld.

The lower court did not err when it stated that the minor bore the burden of showing he could not understand English.

**D. *Whether the Lower Court Abused Its Discretion in Finding That the Minor Understood English***

■ An exercise of discretion by a trial judge may be reversed " ' "where no reasonable basis for the action is shown." ' " (*Braude* v. *Automobile Club of Southern Cal.* (1986) 178 Cal.App.3d 994, 1014 [223 Cal.Rptr. 914].) " ' "[W]here a trial court has discretionary power to decide an issue, a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination. . . ." ' " (*In re Arthur C.* (1985) 176 Cal.App.3d 442, 446 [222 Cal.Rptr. 388].)

■ When evaluating a determination as to the necessity of appointing an interpreter, the policy of upholding a lower court's decision based upon informed discretion is strong. The trial judge is in a unique position to evaluate the reactions and responses of the accused and to determine whether he or she does or does not require an interpreter in order to be adequately understood or in order to adequately understand the proceedings. This exercise of discretion should not be reversed unless there is a complete lack of any evidence in the record that the accused does understand English, thereby rendering the decision totally arbitrary. ■ In the instant case, the evidence was overwhelming that the minor understood English.

Ms. Zamora, who had interpreted for the minor and his parents during the proceedings pursuant to the September 8, 1987, petition and at the juvenile court center, testified that Raymundo understood the basic English language. In her opinion the minor was bilingual.

Marge Harvick was a teaching assistant at Avenal Community School when Raymundo was in attendance there from December 1984 until March

1985. He studied English, world geography, driver education and math. English was the only language used in the classes. Raymundo participated in class discussions and did his assignments properly. He was an average student. She spoke only English with the minor, as she does not speak Spanish. The English curriculum was at the ninth grade, or high school freshman, level.

Deputy Randy Ebner of the Kings County Sheriff's office had had contact with Raymundo on several occasions. The minor spoke with him totally in English. On one occasion during which the officer had read the minor his *Miranda* rights, Raymundo had said that he understood his rights but did not understand what an "attorney" was. In his experience, several juveniles who spoke English to whom he had read their *Miranda* rights had not understood what an "attorney" was. Raymundo's responses to Ebner had always been in English and appropriate.

Furthermore, the trial court's on-the-record discussion with Raymundo at the hearing on October 29, which was entirely in English, provides further support for the court's finding that the minor understands and speaks English at a level sufficient to understand the legal proceedings in which he was involved.

Throughout his brief, the minor selectively ignores testimony unfavorable to him while emphasizing evidence which could be argued to favor his position. The court conducted an extensive evidentiary hearing on the matter. As Judge Buckley noted at the conclusion of the hearing, the only evidence presented which indicated that Raymundo did not speak and understand English was the fact that interpreters had been provided on some occasions in the past. Regarding this fact, however, at the hearing on September 8, 1987, Raymundo indicated that the interpreters had been appointed for his mother and not for him:

"THE COURT: . . . You do have the right to a lawyer, and the right to a court-appointed lawyer if you can't afford to hire one. First of all, do you wish to have a lawyer, Raymundo?

"THE MINOR: Yes, be better.

"THE COURT: Okay. Do you understand and speak English, Raymundo?

"THE MINOR: Yeah, kind of. A little bit.

"THE COURT: Do you go to school in Avenal?

"THE MINOR: No.

"THE COURT: When was the last time you attended school?

"THE MINOR: Two years ago.

"THE COURT: I would appoint Mr. Hazen. We may need an interpreter, I'm not sure. [¶] Would you ask his mother if he speaks English?

"THE INTERPRETER: No; they were telling me outside, your Honor, that he can communicate a little bit, but that he would require an interpreter. I asked Claudia also from probation, and apparently she has communicated with him. Fairly well.

"Ms. WAGNER: [representing the probation department] The minor's been committed to the juvenile center on—I think on two separate occasions, and I have never had a problem with communicating with Raymundo.

"THE COURT: Well, back in 1983 there was no interpreter. There was an interpreter, Ruth Guerra, but that apparently was for the mother. [¶] Have you ever had an interpreter, Raymundo?

"THE MINOR: Yeah. My mom, not me.

"THE COURT: That's possible. I would simply order that Mrs. Zamora translate for Raymundo and speak loudly enough so that the mother can hear too. All right."

The only real evidence presented at the later hearing which tended to indicate that an interpreter was required was the appointment of an interpreter on the earlier occasions. Since this was explained by the minor as being not for his benefit but for the benefit of his mother, there not only was ample evidence that Raymundo could understand English, but also the only contrary evidence had been refuted by the minor himself.

Accordingly, the lower court did not abuse its discretion when it found that Raymundo could speak and understand English during all prior proceedings as well as during the proceedings pursuant to the petition filed September 8, 1987. Because the minor could speak and understand English, the appointment of an interpreter was not required for any of the proceedings below and the minor's contentions on appeal must be rejected.

## DISPOSITION

The judgment is affirmed.

Martin, Acting P. J., and Hamlin, J., concurred.